IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| TAE CHON,<br><br>                    Plaintiff,<br><br>v.<br><br>USA, et al.,<br><br>                    Defendants. | REPORT AND RECOMMENDATION<br><br>Case No. 2:16-cv-00187-DAK-CMR<br><br>District Judge Dale A. Kimball<br><br>Magistrate Judge Cecilia M. Romero |

## I.      BACKGROUND

This matter is referred to the undersigned in accordance with 28 U.S.C. § 636(b)(1)(B) (ECF 57; ECF 64; ECF 75).  In 2016, pro se Plaintiff Tae H. Chon (Plaintiff) initiated this civil rights action under 42 U.S.C. § 1983 (ECF 4) and was granted leave to proceed *in forma pauperis* under 28 U.S.C. § 1915 (the IFP Statute) (ECF 3).  The court reviewed Plaintiff's initial Complaint (ECF 4) and granted him an opportunity to file an amended pleading to cure noted deficiencies (ECF 25; ECF 28).  In 2017, the court screened Plaintiff's Amended Complaint (ECF 31) pursuant to the IFP Statute and ultimately dismissed his claims as deficient (ECF 38; ECF 45).  Plaintiff timely appealed this ruling to the Tenth Circuit (ECF 49).  The Tenth Circuit remanded this case to the district court for the limited purpose of considering the merits of Plaintiff's First Amendment retaliation claim in the first instance (ECF 56).  In accordance with the mandate from the Tenth Circuit, this court will screen Plaintiff's First Amendment retaliation claim in his Amended Complaint pursuant to the IFP Statute.

## II.    LEGAL STANDARDS

Whenever the court authorizes a party to proceed without payment of fees under the IFP

Statute, it is required to "dismiss the case at any time if the court determines that . . . the action

. . . fails to state a claim on which relief may be granted."  8 U.S.C. § 1915(e)(2)(B)(ii).  In

determining whether a complaint fails to state a claim for relief under the IFP Statute, the court

employs the same standard used for analyzing motions to dismiss for failure to state a claim

under rule 12(b)(6) of the Federal Rules of Civil Procedure.  *Kay v. Bemis*, 500 F.3d 1214, 1217–

18 (10th Cir. 2007).  Under this standard, the court "look[s] for plausibility in th[e] complaint."

*Id.* at 1218 (citations and internal quotation marks omitted).  The court "look[s] to the specific

allegations in the complaint to determine whether they plausibly support a legal claim for relief.

Rather than adjudging whether a claim is 'improbable,' '[f]actual allegations [in a complaint]

must be enough to raise a right to relief above the speculative level.'"  *Id.* (quoting *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)).

In undertaking this analysis, the court is mindful that Plaintiff is acting pro se and that

"[a] pro se litigant's pleadings are to be construed liberally and held to a less stringent standard

than formal pleadings drafted by lawyers."  *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir.

1991).  However, it is not "the proper function of the district court to assume the role of advocate

for the pro se litigant," *id.*, and it "will not supply additional facts, nor will [it] construct a legal

theory for [a pro se] plaintiff that assumes facts that have not been pleaded," *Dunn v. White*, 880

F.2d 1188, 1197 (10th Cir. 1989) (per curiam). Further,

> [t]he broad reading of [a pro se] plaintiff's complaint does not
> relieve the plaintiff of the burden of alleging sufficient facts on
> which a recognized legal claim could be based. . . . [C]onclusory
> allegations without supporting factual averments are insufficient to
> state a claim on which relief can be based.  This is so because a pro
> se plaintiff requires no special legal training to recount the facts

> surrounding his alleged injury, and he must provide such facts if
> the court is to determine whether he makes out a claim on which
> relief can be granted.  Moreover, in analyzing the sufficiency of
> the plaintiff's complaint, the court need accept as true only the
> plaintiff's well-pleaded factual contentions, not his conclusory
> allegations.

*Bellmon*, 935 F.2d at 1110 (citations omitted).  With these standards in mind, the court turns to

the sufficiency of Plaintiff's First Amendment retaliation claim.

## III.   DISCUSSION

### A.   Plaintiff's Allegations

Plaintiff's First Amendment retaliation claim arises from alleged retaliatory acts by

numerous prison officials while he pursued his habeas petition under 28 U.S.C. § 2255.  Plaintiff

alleges that following the filing of his petition at Federal Correctional Institution (FCI) Herlong,

"he involuntarily was transferred to FCI Lompoc low facility" (ECF 31, ¶ 186), and that upon his

arrival, he "was assigned to an upper bunk nearby freeway or entrance in E-dorm house" (*Id.* ¶

189).  He alleges that "later, he requested to [sic] a regular upper bunk and reassigned to the

regular bunk within two weeks or so, then lived there for his quest for section 2255 relief" (*Id.*).

The basis of Plaintiff's retaliation claim against the named defendants appears to be retaliatory

acts by prison officials and staff at FCI Lompoc detailed below.

#### 1.   Document Incident

Plaintiff alleges prison education officers Defendants Heuring, DeGregorio, and Marshall

and Defendant Lieutenant Foster were involved in an incident relating to his documents.

Plaintiff alleges that his gym bag containing a draft motion for summary judgment regarding

prosecutorial misconduct "was picked up by [D]efendant Heuring, refused to return by

[D]efendant DeGregorio, and searched by them & [D]efendant Marshall for about 15–20

minutes in a remote staff office room" and that when he retrieved the bag, "the draft documents

were upside down and inside out" (*Id.* ¶ 195b.–c.).  He alleges that their "attitude was upset/angry" and that Defendant Foster ordered him to his office and compelled him to say "It won't happen again!" (*Id.* ¶ 195d.).

### 2. Freeway Bunk

Plaintiff alleges that prison counselor Defendant J. Harris "moved plaintiff to punishment freeway upper bunk about or on October 4, 2010 when the Denial Order of § 2255 Motion was received by plaintiff, from his regular upper bunk in the dorm" (*Id.* ¶ 195e.).  Plaintiff alleges that "[d]espite [] many requests and visits to his office, [D]efendant Harris refused his requests to return to the regular upper bunk, treated him differently than the other [sic], threatened him not to come to his office with 'You should have gone long time ago!' and if come [sic], he would put him in SHU" (*Id.* ¶ 195f.).

### 3. Bed Fall Incident

The focus of Plaintiff's retaliation claim appears to be an incident where Plaintiff fell out of his bed, which Plaintiff attributes to supervisory officials Defendants Bowers (warden), Captain Williams, Webster (special investigator), Brewers (unit manager), and Lieutenant Foster as well as prison education officers Defendants Harris, Heuring, DeGregorio, and Marshall. Plaintiff alleges that while waiting for a ruling on a Rule 59(e) motion also addressing prosecutorial misconduct, he "was found to be in coma condition from a bedfall of 5 ½ feet height of his punishment upper bunk" (*Id.* ¶ 196–97).  Plaintiff claims that these defendants "conspired to harm and retaliate against plaintiff at their custody of him by a bedfall on November 22nd of 2020 [and] designated plaintiff to sleep on their 5 ½ feet height freeway punishment bunk during midnight darkness and deep in sleep during the duration of waiting for the decision of 59(e) Motion from the section 2255 court" (*Id.* ¶ 109a.)  He further claims that

these defendants "failed and forbore to investigate the bedfall incident in order to conceal their actions and involvement from plaintiff" (*Id.* ¶ 109b.).  He concludes that "Defendant Bowers' and Captain Williams' actions and forbearance in concerting [sic] bedfall to harm or injure plaintiff's physical body in concussion, broken rotator cuff and acute kidney failure and etc with their co-conspirators and/or subordinates violated the plaintiff's rights of First/Eighth Amendments to the United States Constitution and constituted . . . retaliation" (ECF 31 at 40).

### 4.    Inadequate Medical Treatment

Plaintiff attributes his allegations of inadequate medical treatment to prison medical staff Defendants Phillip A. Winn, M.D., Richard Gross, D.O., Mr. Salandanan (clinic administrator), Mr. Rada (physician assistant), and Ms. Blitz (physician assistant) as well as prison counselor Defendant B. Magana.  Plaintiff alleges that Defendants Winn and Lompoc Healthcare District (LHD) "failed to provide plaintiff with any additional treatment and care for his concussion and broken shoulder, etc." and lists various other complaints and injuries relating to his medical treatment for the bed fall (*Id.* ¶¶ 200–06).  Plaintiff claims that Defendants Gross, Salandanan, Magana, Rads, Blitz, Winn, and LHD "failed, refused and/or forbore to provide . . . any other emergency medical care . . . for his known and documented and diagnosed concussion, broken shoulder, acute kidney failure and etc from the bedfall incident" (*Id.* ¶ 109c.)

### 5.    Denial of Lower Bunk

Plaintiff attributes the denial of his request for a lower bunk to supervisory officials Defendants Williams and Bowers as well as prison counselors Defendants B. Magana, J. Webster, and D. Escalante and clinic administrator Defendant Salandanan.  Plaintiff alleges that he submitted filings to the Tenth Circuit and requests for BOP administrative remedies after being "assigned to a lower bunk since the bedfall day" (*Id.* ¶ 207).  He alleges that under the

command of Defendants Williams and Bowers, Defendant Magana "terminated the plaintiff's lower bunk pass with assistance/approval from [D]efendant Salandanan who was the clinic administrator in name of manipulation of the bedfall incident" and that Defendants Webster and Escalente refused and rejected his requests for a lower bunk (*Id.* ¶¶ 208–09).

### B.       Plaintiff has failed to state a First Amendment retaliation claim.

The First Amendment of the United States Constitution protects the right "to petition the government for a redress of grievances."  U.S. Const. amend I.  "Government retaliation against a plaintiff for exercising his or her First Amendment rights may be shown by proving the following elements: (1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct."  *Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007) (citation and internal quotation marks omitted).  The court will address each element in turn.

#### 1.       Protected Activity

Plaintiff alleges he was retaliated against by Defendants for making various court filings relating to his § 2255 petition.  "It is well-settled that prison officials may not retaliate against or harass an inmate because of the inmate's exercise of his right of access to the courts."  *Requena v. Roberts*, 893 F.3d 1195, 1211 (10th Cir. 2018) (citation and internal quotation marks omitted). The court therefore finds that Plaintiff has satisfied the first element of a retaliation claim.

#### 2.       Injury

Plaintiff alleges in detail numerous physical injuries and inadequate medical treatment resulting from Defendants' retaliatory actions (ECF 31, ¶ 110).  Taking these allegations as true,

the court finds that these injuries could have plausibly resulted from Plaintiff falling from his freeway bunk and being denied adequate medical treatment and a lower bunk, and that in light of their severity, these injuries would chill an ordinary person from pursuing a § 2255 petition in court. The court therefore concludes that the physical injuries and inadequate treatment allegations are sufficient to meet the second element of a retaliation claim.

However, the court finds that the allegations relating to the document incident do not give rise to a retaliation claim. "A trivial or de minimus injury . . . is not sufficient to support a retaliation claim." *Johnson v. Whitney*, 723 F. App'x 587, 595 (10th Cir. 2018). Plaintiff's allegations that Defendants Heuring, DeGregorio, and Marshall searched his gym bag and returned his draft motion "upside down and inside out" as well as allegations of angry or threatening behavior by Defendant Foster amount to nothing more than de minimus injuries (ECF 31, ¶¶ 195b.–d.). "The Tenth Circuit has found that verbal harassment alone is insufficient to state a claim for unconstitutional retaliation." *Brewer v. Davis County*, 1:15-cv-40-TC, 2020 WL 2840345, at *7 (D. Utah June 1, 2020) (citations and internal quotation marks omitted). Further, "[w]hile destruction of legal documents can give rise to a First Amendment retaliation claim," such a claim fails where the plaintiff fails "to identify what documents were destroyed" or fails to allege that he "was actually injured . . . by the documents' destruction." *Id.* at *8 (citation and internal quotation marks omitted). Here, Plaintiff fails to allege that he was actually injured by the verbal harassment by Defendant Foster or the rummaging of documents by Defendants Heuring, DeGregorio, and Marshall. Therefore, the court finds that any retaliation claim based on the document incident should be dismissed.

3.    Causation

To satisfy the third element, "an inmate must allege specific facts showing that 'but for the retaliatory motive, the incidents to which he refers . . . would not have taken place.'" *Banks v. Katzenmeyer*, 645 F. App'x 770, 772 (10th Cir. 2016) (quoting *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998)).  This requires the plaintiff to meet a "heightened standard" showing "not only that retaliation for [filing of grievances] played a role in [the adverse action] but that such retaliation was the decisive factor." *MacArthur v. Tubbs*, No. 2:15-cv-117-DB, 2020 WL 2808808, at *17 (D. Utah May 28, 2020) (first alternation in original) (quoting *Strope v. McKune*, 382 F. App'x 705, 710 (10th Cir. 2010)).  The Tenth Circuit has "consistently held that temporal proximity between protected activity and a challenged prison action does not, in itself, demonstrate the causal nexus for a retaliation claim." *Strope v. Cummings*, 381 F. App'x 878, 883 (10th Cir. 2010).

Here, Plaintiff makes nothing more than vague, conclusory allegations that fail to establish a sufficient causal link between Defendants' retaliatory actions and Plaintiff's court filings.  With respect to his allegations that Defendant Harris moved Plaintiff to a freeway bunk and denied his requests for a regular upper bunk (ECF 31, ¶¶ 195e.–f.), Plaintiff merely alleges a temporal proximity between these events and his receipt of the denial of his § 2255 motion, which is insufficient to state a claim for retaliation.  His allegations that six Defendants denied his requests for a lower bunk are also insufficient for the same reason, in that Plaintiff alleges only a temporal proximity between these retaliatory acts and his filings to the Tenth Circuit and BOP (*id.* ¶¶ 207–09).  Further, Plaintiff faults nine Defendants for his bed fall incident and makes conclusory allegations that they "conspired to harm" him and "failed to investigate" this incident (*id.* ¶¶ 195a.–b.), but provides no supporting facts showing their individual involvement

or any allegations plausibly linking this incident to his court filings. Once again, he alleges at most a temporal link between this incident and the pendency of his Rule 59(e) motion. Finally, Plaintiff's allegations relating to inadequate medical treatment are also conclusory and fail to establish any plausible link to his court filings.

In sum, even when construed liberally, Plaintiff's allegations suggest at most that the named Defendants may have played a role in these incidents, but Plaintiff relies on nothing more than speculation to show a retaliatory motive for any adverse actions against him. Plaintiff has therefore failed to establish the third element of a retaliation claim. Because Plaintiff has already been given an opportunity to cure pleading deficiencies, the court finds that allowing Plaintiff to amend his retaliation claim would be futile. Accordingly, the court should dismiss Plaintiff's First Amendment retaliation claim.

## RECOMMENDATION

In summary, IT IS HEREBY RECOMMENDED that Plaintiff's First Amendment retaliation claim be dismissed without prejudice.

## NOTICE

Copies of the foregoing Report and Recommendation are being sent to all parties who are hereby notified of their right to object. Within **fourteen (14) days** of being served with a copy, any party may serve and file written objections. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to object may constitute a waiver of objections upon subsequent review.

DATED this 15 January 2021.

Magistrate Judge Cecilia M. Romero
United States District Court for the District of Utah